UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| KEVIN GERARD MILLS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:17-CV-552-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| LOUISVILLE METROPOLITAN | ) | **ORDER** |
| GOVERNMENT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendants' Motion to Dismiss, on the parties' cross Motions for Summary Judgment, and on Plaintiff's Motion to Strike Defendants' Untimely Motion for Summary Judgment. [R. 13; R.14; R. 17; R. 22] Defendants Louisville Metropolitan Government ("Louisville Metro") and Anthony Summerall ("Summerall") moved to dismiss the case for failure to prosecute and also moved for summary judgment on all claims. Plaintiff Kevin Gerard Mills ("Mills") moved for partial summary judgment on the issue of liability, and also moved to strike Defendants' Cross-Motion for Summary Judgement, claiming that it was untimely filed. For the reasons stated below, the Court will grant Defendants' Cross Motion for Summary Judgment on all claims, will deny Mills's Motion for Summary Judgment, and deny the remaining motions as moot.

I. Factual Background

The parties provide widely diverging accounts concerning the incidents that led to Mills's arrest and which form the basis of his claims. The following facts are not in dispute. On or about September 11, 2016, Summerall, a patrolman with the Louisville Metro Police

- 1 -

Department ("LMPD"), responded to a call of a domestic disturbance at a local residence in Louisville, Kentucky. The residence belonged to Mills, who shared the home with Janice Howard ("Howard"), his girlfriend. Howard made the call to the LMPD, claiming domestic abuse.

This is where the parties' accounts diverge. Defendants filed a DVD containing the video from Officer Summerall's body-cam of the incident in support of their Cross Motion for Summary Judgment. [R. 17-3, Ex. 2, Officer Video-Cam at file nos. 1-6] The Court has reviewed the video, which includes all the events in question, beginning with Summerall's arrival at Plaintiff's residence and continuing through Plaintiff's arrest. Defendants also filed an affidavit of Officer Summerall, which conforms to the facts presented by his body-cam video. [R. 17-2, Aff. Anthony Summerall] As discussed below, "where, as here, there is 'a videotape capturing the events in question,' the court must 'view[] the facts in the light depicted by the videotape.'" *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 378–81 (2007)) (alteration in *Green*).

The Court finds the video depicts the following facts. Officer Summerall arrived at Mills's residence, and was invited in by Howard. [R. 17-3, Ex. 2, Officer Video-Cam at file no. 1, 0:55 – 10:12] Mills did not object to Summerall entering the residence. *Id.* When Summerall asked what was going on, Mills and Howard began arguing, or continued an argument that they had been having just prior to Summerall's arrival. *Id.* Summerall asked Howard to come to the other side of the room away from Mills. *Id.* When Summerall asked Mills to identify himself, Mills immediately informed Summerall that he was "a police officer," though not with the LMPD. *Id.* Summerall asked to see his identification, and Mills provided his driver's license. *Id.* Summerall then asked Howard to come outside with him, separating the two. *Id.* While outside

the residence, Summerall asked Howard to recount what had happened. *Id.* Howard appeared visibly shaken. *Id.* She began crying early on during her conversation with Summerall, making it difficult to hear everything that was said. *Id.* However, Howard recounted other alleged instances of Mills's abuse. *Id.* at 6:38 – 10:12. After listening to Howard, Summerall returned briefly to his LMPD vehicle and called his sergeant, Michelle Kline. *Id.* at 3:53. Summerall informed Sergeant Kline that Mills was an "active police officer" and that Howard was "all bruised up, marked up, hair pulled, shirt torn off, the house is a mess . . . He's saying he didn't do anything, but she has the bruises . . ." *Id.* at 3:53 – 4:20. Sergeant Kline instructed Summerall to "stand by" and not to "lock him up yet." *Id.* at 4:54. Summerall then took photographs of Howard's bruising and torn hair. *Id.* at 11:00 – 13:08.

Summerall then spoke with Mills. *Id.* at 15:05 – 20:08. During this exchange, Mills informed Summerall that the two had just had an argument after Howard refused to provide Mills with his truck keys. *Id.* Mills denied assaulting Howard. *Id.* He claimed Howard fabricated the allegations of assault in response to his asking her to leave his residence. *Id.* Summerall then took pictures of Mills and some torn clothing that resulted from the altercation. *Id.* At one point, Mills volunteered, "I might have ripped her shirt while she was in the process of ripping mine." *Id.* at 24:30. Summerall then left the residence, and asked Mills to have a seat. *Id.* During this interview, Summerall made no physical contact with Mills.

When Summerall returned outside, Sergeant Kline had arrived on the scene and was reviewing something on a cell phone. *Id.* at 26:26 through 30:31. Later footage reveals that Sergeant Kline was playing back a recording Howard had made of the altercation that took place between Mills and Howard. *Id.* at file no. 2, 00:19 – 3:36.

Summerall's body-cam video depicts long stretches of time where he remained outside the residence while Sergeant Kline questioned Mills inside. *Id.* through file no. 3, 4:10. Summerall only entered the residence twice during this time. He entered once to ask Mills if Howard could provide water to her dogs, then returned outside to remain with Howard. *Id.* at 4:10-4:45. Another time, Summerall entered the residence to join the other responding patrolman, Officer Sanders, who had been waiting with Mills. Summerall never touched Plaintiff during these periods. Later, Sergeant Kline can be seen discussing something with Howard. *Id.* at file no. 4, 21:58. Sergeant Kline then conferred with Summerall one final time, explaining what the charges against Mills would be, and requested that Summerall "watch me," presumably to provide support for her during the arrest *Id.* at 24:24 – 25:05. Sergeant Kline advised Summerall that Mills would be charged with harassment with physical contact and terroristic threatening. *Id.* Sergeant Kline and Summerall then re-entered Howard's residence. *Id.* at 25:16. Sergeant Kline informed Mills that he was under arrest and placed him in handcuffs. *Id.* at 25:22 – 28:27. She then removed Mills from the residence, followed by Officer Sanders and Summerall, and placed him in her LMPD vehicle. *Id.* Summerall was the last to leave the residence. *Id.* Throughout the arrest, Summerall stood apart from Mills and never touched him. *Id.*

Following Mills's arrest, Summerall played Howard's recording of the altercation again while completing the Arrest Citation. *Id.* at file no. 5, 4:34 – 10:30. During an explicit exchange, Mills clearly threatens Howard and says "If you don't give me the keys to my truck right now . . . hurt you is not what's going to happen. Kill you might happen." *Id.* at 5:03 – 5:38. Summerall then forwarded to another portion of the recording wherein Howard can be heard screaming, "Get off of me!" repeatedly. *Id.* at 8:53.

Summerall prepared the Arrest Citation, charging Mills with violations of KY. Rev. St. § 525.070 (Harassment – Physical Contact – No Injury) and § 508.078 (Terroristic Threatening, *2nd* Degree). [R. 17-4] Officer Sanders prepared the JC-3 form that accompanied Mills's Arrest Citation and this form included a charge for "Terroristic Threatening, *3rd* Degree," [in violation of KY. Rev. St. § 508.080]. *Id.* As Defendants explain, Summerall's Arrest Citation contained a typo. [R. 17-1, at p. 3; R. 17-2, Aff. Anthony Summerall] Mills focuses much of his argument on the fact that one of the statutes relied upon (Harassment, KY. Rev. St. § 525.070) includes the phrase "no injury," as well as the fact that the other statutes cited in Summerall's Arrest Citation is Terroristic Threatening, 2nd Degree. [R. 14-4, Pl. Mem. in Supp. of Mot. Summ. J. ("Pl. Mem. in Supp.") at p. 2; R. 23-1, at p. 2] Mills alleges that based on the statutes cited in Summerall's Arrest Citation, Summerall lacked probable cause to arrest him. [R. 23-1, at p. 4] However, as explained below, neither the statutes listed on his Arrest Citation nor the discrepancy between the two documents affects the Court's ruling on any of the pending motions, and is therefore not material to the Court's analysis.

## II. Procedural Background

Mills filed this action on September 11, 2017 alleging: (1) a Section 1983 claim against Summerall for Fourth and Fourteenth Amendment violations, (2) state law claims against Summerall, (3) a Section 1983 claim against Louisville Metro for failing to "adequately hire, train and supervise its police officers, including Defendant Summerall, as to the proper use of probable cause, force and arrest . ."; and 4) a state law claim of negligent hiring against Louisville Metro based on Summerall's conduct during the arrest. [R. 1, Compl., at ¶¶ 7-15, 17, 20-21, 23, 24, 27] Mills also sought punitive damages against both Defendants. *Id.* at ¶ 29.

Following the discovery deadline, the Court set a telephonic status conference for July 11, 2018. [R. 11] Counsel for Mills failed to appear at this status conference, so the status conference was not held. [R. 12] The Court ordered counsel for Mills to file a report on the status of discovery no later than July 23, 2018. *Id.* Counsel for Mills failed to do so. Thereafter, the parties filed a flurry of motions. On July 30, 2018, Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 41(b). [R. 13] That same day, and presumably in response, Mills filed a Motion for Summary Judgment on the issue of liability as well as a late Status Report in an attempt to comply with the Court's July 16, 2018 Order. [R. 14; R. 15] Mills attached his affidavit and the Arrest Citation in support of his Motion for Summary Judgment. [R. 14-2, Pl. Aff.; R. 14-3] In his untimely Status Report, Mills advised the Court that he had a "pending summary judgment motion" and "Plaintiff is prepared and ready for trial." [R. 15] Mills failed to address the Court's Order regarding the status of discovery. *See* [R. 12]

Mills then filed a response to the Defendants' Motion to Dismiss on August 20, 2018. [R. 16] That same day, Defendants filed a Cross-Motion for Summary Judgment and In Response to Mills's Motion for Summary Judgment.[1] [R. 17] For support, Defendants filed the affidavit of Anthony Summerall, a DVD Exhibit of Officer Summerall's body-cam video capturing the incident in question, the post-arrest citations, and subsequent court filings from Mills's criminal proceedings. [R. 17-2, Summerall Aff.; R. 17-3, Ex. 2, Officer Video-Cam., nos. 1-6; R. 17-4; R. 17-5; R. 17-6] Mills then filed a Motion to Strike Defendants' Untimely Motion for Summary Judgment ("Motion to Strike") before filing a Response in opposition. [R. 22; R. 23] Defendants filed a Response in opposition to Mills's Motion to Strike. [R. 24]

---

[1] It appears [R. 18] is a duplicate entry of [R. 17] and so will be disregarded.

## III. Analysis

### A. Plaintiff's Motion to Strike

Before addressing the merits of the parties' cross Motions for Summary Judgment, the Court will address Mills's Motion to Strike Defendants' Cross Motion for Summary Judgment as untimely. [R. 22] Defendants filed their Cross Motion for Summary Judgment on August 20, 2018. [R. 17] Per the Court's Scheduling Order, dispositive motions were due on July 30, 2018. *See* [R. 9] First, pursuant to the Rule 16, a schedule may be modified for "good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The Court finds good cause exists here. Mills created these issues by the manner in which he prosecuted his case. When Defendants filed their Cross Motion for Summary Judgment and Response to Mills's Motion for Summary Judgment, Mills had failed to conduct any discovery in this matter; failed to attend the parties' telephonic status conference [R. 11]; failed to follow the Court's directives following this conference [R. 12]; then failed to fully comply when he filed an untimely Status Report [R. 15]. At the time his Motion for Summary Judgment was filed, Defendants had pending a Motion to Dismiss for failure to prosecute. Mills failed to respond to this motion before filing his own Motion for Summary Judgment. Considering all of this, Defendants believed they had legitimate grounds to move for summary judgment on all claims. [R. 24, at p. 1]

Second, Mills's Motion to Strike ignores his own untimely practice in this case. Mills's Motion to Strike was filed 109 days after Defendants' Cross-Motion for Summary Judgment was filed. [R. 17; R. 22] Further, Mills's Reply in Support of his Motion for Summary Judgment was filed 88 days late in violation of LR 7.1(c) - - (it was due on September 4, 2018, and was filed on December 1, 2018). [R. 21] Similarly, Mills's Response to Defendants' Cross Motion for Summary Judgment was due on Monday, September 10, 2018, but was not filed until December 17, 2018. [R. 24] Mills cannot use the Scheduling Order as both sword and shield when he

himself wholly disregarded the Court's deadlines and Orders. Therefore, the Court finds good cause to modify the Scheduling Order. Defendants' Cross Motion for Summary Judgment will be deemed timely filed. The Motion to Strike is denied.

**B.      Standard of Review – Summary Judgment**

The standard for summary judgment is well known. Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. In considering a motion for summary judgment, the Court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 586–587 (citation omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–248 (emphasis in original). A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson,* 477 U.S. at 248. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

Where, as here, there is "a videotape capturing the events in question," the Court must "view[ ] the facts in the light depicted by the videotape." *Scott,* 550 U.S. at 378–81. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott*, 550 U.S. at 380–81. Still, "[e]ven

if part of [a party]'s testimony is blatantly contradicted by [an] audio [or video] recording, that does not permit the district court to discredit his entire version of the events." *Coble v. City of White House*, 634 F.3d 865, 870 (6th Cir. 2011). Even if a recording blatantly contradicts a party's "[exact] version of the events," or certain parts of his version, that alone is not fatal. *Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 527 (6th Cir. 2018). A recording must blatantly contradict a party's "*entire* version of the events" in material respects to each claim for the Court to disregard Mills's version of the facts on summary judgment. *Id.* (citing *Coble*, 634 F.3d at 870) (emphasis in *Hanson*).

Finally, the Court has no "duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris,* 260 F.3d 654, 665 (6th Cir. 2001).

To support his factual background, Mills attached his affidavit and the Arrest Citation following the incident. [R. 14-2, Pl. Aff.; R. 14-3] However, Mills's affidavit does not satisfy the requirements of Fed. R. Civ. P. 56(e). Under Rule 56(e) of the Federal Rules of Civil Procedure, "affidavits shall be made on personal knowledge [and] shall set forth such facts as would be admissible in evidence." Fed. R. Civ. P. 56(e). "It is well settled that courts should disregard conclusions of law (or 'ultimate fact') found in affidavits" submitted for summary judgment. *F.R.C. Int'l, Inc. v. United States,* 278 F.3d 641, 643 (6th Cir. 2002). Here, Mills's affidavit did nothing more than reach a series of legal conclusions, essentially reciting the claims against Defendants from his Complaint. As the affidavit fails to set forth any other facts, the Court disregards this affidavit in its entirety. Fed. R. Civ. P. 56(e). Mills has taken no discovery

and presents no other evidence to support his Motion for Summary Judgment. After reviewing the body-cam video of Mills's arrest, the Court concludes that Mills's version of events is so utterly discredited that no reasonable jury could have believed him. *Scott*, 550 U.S. at 380–81. Therefore, the Court need not adopt Mills's version of the facts.

C.   **Discussion – Motions for Summary Judgment**

   1.   **Defendants' Cross Motion for Summary Judgment**

Defendants move for summary judgment of all claims asserted by Mills. In his Complaint, Mills alleges that Summerall's arrest constitutes Section 1983 violations of his Fourth and Fourteenth Amendment rights against unreasonable searches and seizures of his person, as well as state law torts of assault, battery, outrageous conduct, and/or intentional infliction of emotional distress, and constitutional and state law claims for negligent training and hiring practices by Louisville Metro. [R. 1, Compl., at ¶¶ 17, 20-21, 23, 24, 27] The gist of Mills's claim is that Summerall, not Sergeant Kline, arrested Mills without probable cause, and that Louisville Metro is liable for both constitutional and state law claims for its failure to properly hire and supervise Summerall. *See generally* [R. 14-4, Pl. Mem. in Supp., at p. 2; R. 21]

   a.   **Constitutional Claims Against Summerall**

The Court construes Mills's constitutional claims against Summerall brought under Section 1983 as an improper arrest and detention in violation of the Fourth Amendment. Mills has not pointed to a specific substantive or procedural right that Summerall violated under the Fourteenth Amendment, and the Court will not endeavor to do that for him on summary judgment. *Carlisle v. Beer*, No. CIV.A. 05-59-DLB-JGW, 2013 WL 6834809, at *3 (E.D. Ky. Dec. 20, 2013) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)) ("It is not

sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

The Fourth Amendment protects the right of individuals to be free from improper arrest and detention. U.S. CONST. amend. IV  However, it is well settled that "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed," *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004), and the "validity of the arrest does not depend on whether the suspect actually committed a crime." *Michigan v. DeFillippo,* 443 U.S. 31, 36 (1979).  Accordingly, in order for Mills's wrongful arrest claim to succeed under Section 1983, he must prove that the arresting officers lacked probable cause.  *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (citing *Fridley v. Horrighs,* 291 F.3d 867, 872 (6th Cir. 2002)) (internal citation omitted).

"Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Logsdon,* 492 F.3d at 341 (quoting *Henry v. United States,* 361 U.S. 98, 102 (1959)) (internal quotations omitted).  The probable cause inquiry "'depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest,' where supported by 'reasonably trustworthy information.'" *Id.* (citation omitted).  An officer who intends to execute a warrantless arrest is not tasked with an "overly-burdensome duty to investigate." *Id.*  In initially determining probable cause, an officer need not "investigate independently every claim of innocence." *Id.* (citing *Gardenhire v. Schubert,* 205 F.3d 303, 318 (6th Cir. 2000)).  "And after the officer determines, on the basis of the facts and circumstances known to him, that probable cause exists, the officer has no further duty to investigate or to search for exculpatory evidence." *Id.* However, the officer's initial probable cause determination must be based on both "inculpatory

and exculpatory evidence known to [him]," and the officer "cannot simply turn a blind eye toward potentially exculpatory evidence." *Id.* (citations and internal quotations omitted).

After reviewing the video capturing the event in question, the Court agrees with Defendants that there is no genuine issue of material fact. First, the video clearly demonstrates that Sergeant Kline, not Summerall, arrested Mills. Second, the Court finds that his arrest, whether by Officer Summerall or Sergeant Kline, or both, was supported by probable cause. Pursuant to KY. Rev. Stat. § 431.005:

> (2) (a) Any peace officer may arrest a person without warrant when the peace officer has probable cause to believe that the person has intentionally or wantonly caused physical injury to a family member, member of an unmarried couple, or another person with whom the person was or is in a dating relationship.

KY. Rev. Stat. § 431.005(2)(a). Based on the post-arrest citations, both Summerall and Officer Sanders noted that "[t]he victim stated the perp pulled her hair causing injury to her head." [R. 17-4] Further, when Summerall first contacted Sergeant Kline regarding the incident, he mentioned that Howard was "all bruised up, marked up, hair pulled, shirt torn off, the house is a mess." [R. 17-3, Ex. 2, Officer Video-Cam, no. 1, 3:53] This version comports with the Court's review of the video as well as the explicit audio recording Howard made that captured the altercation. Whether Mills was ultimately charged with causing physical injury is irrelevant. Because the video and Summerall's affidavit clearly demonstrate there was an injury and that the officers had probable cause to arrest Mills, and because he has provided no other evidence to support his claim of improper arrest, summary judgment will be awarded to Defendants concerning Mills's constitutional claims against Summerall.

Even after the video was submitted, Mills still argued that Summerall was the arresting officer, not Sergeant Kline. However, this is not a genuine issue of material fact, since Mills's version of events is so utterly discredited by the record that no reasonable jury could have

believed him. *Scott*, 550 U.S. 380–81. In addition, Mills attempts to create factual issues by pointing to the discrepancies in the Arrest Citations. As explained above, Sergeant Kline had probable cause to arrest Mills regardless of what the post-arrest citations indicated or what crime he was ultimately charged with. Moreover, as this typo was committed *following* Plaintiff's arrest (which was already supported by probable cause), this fact is not material to any of Plaintiff's claims. Defendants submitted the Affidavit of Summerall and the irrefutable body-cam video. This video confirms that Sergeant Kline made the ultimate decision to arrest Mills, and this decision was supported by probable cause. The responding officers listened carefully to both Mills's and Howard's statements, including Mills's admission that he "might have torn [Howard's] clothes" (a fact that Mills disputes in his Response and Motion for Summary Judgment), and reviewed the explicit audio recording of the altercation. The record contradicts Mills's "entire version of the events" in material respects to each claim. *Hanson*, 736 Fed.App'x at 527 (citing *Coble*, 634 F.3d at 870). Defendants' Cross Motion for Summary Judgment on this claim is granted.

      **b.**      **State Law Claims against Summerall**

Defendants seek summary judgment on Mills's state law claims, though the same were not specifically addressed in their motion. Mills also failed to address these claims in any meaningful way in his Response and Motion for Summary Judgment. As discussed below, Defendants' motion will be granted on these claims on the basis that Mills has failed to adequately support his claims against Summerall for assault, battery, outrageous conduct, and/or intentional infliction of emotional distress.

In Kentucky, "[a]ssault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching." *Banks v. Fritsch*, 39 S.W.3d

474, 480 (Ky. Ct. App. 2001). Battery under Kentucky law is any "unlawful touching of the person of another, either by the aggressor himself, or by any substance set in motion by him." *Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000). In Kentucky, the tort of intentional infliction of emotional distress (IIED) is also referred to as outrageous conduct. "Kentucky still takes a very restrictive/limited approach to the tort of outrageous conduct, which covers only outrageous and intolerable conduct." *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 385 (6th Cir. 2017) (quoting *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 407 (6th Cir. 1997) (internal quotation marks and citation omitted). In order to prove an IIED claim, Mills "must show that [Defendants'] conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citing *Wathen*, 115 F.3d at 407) (internal quotation marks and citation omitted); *see also Brewer v. Hillard*, 15 S.W.3d 1, 6–7 (Ky. Ct. App. 1999).

Mills has done literally nothing to substantiate these claims throughout the entire course of this case. When the Court directed Mills to provide a report with the status of discovery, he replied only that he was "ready for trial." [R. 15] The Court construed this response to mean that Mills was satisfied with the evidence he had prepared for his case, and was ready to defend a motion for summary judgment from Defendants.

When Defendants inevitably filed a Cross Motion for Summary Judgment, they supplied the aforementioned video in support, which confirms that Summerall never touched Mills during the course of his arrest. It also clearly demonstrates that Summerall never raised his voice to Mills; his actions were professional, courteous, and patient. When Defendants filed their Cross Motion for Summary Judgment on all claims, Mills had an "affirmative duty to direct the Court's attention to those specific portions of the record upon which he seeks to rely to create a genuine

issue of material fact." *In re Morris*, 260 F.3d at 665. He did not. Having no "duty to search the entire record to establish that it is bereft of a genuine issue of material fact," *Street*, 886 F.2d at 1479-80, the Court accepts the evidence presented by the video. The Court grants summary judgment for Defendants as to Mills's state law claims.

      **c.**     ***Monell* Claim against Louisville Metro**

Defendants also move for summary judgment against Mills for his claims against Louisville Metro. Mills alleges a separate Section 1983 claim against Louisville Metro for failing to "adequately hire, train and supervise its police officers, including Defendant Summerall, as to the proper use of probable cause, force and arrest towards citizens of the Commonwealth of Kentucky." [R. 1, Compl., at ¶ 23] Mills asserts that Summerall's violation of Mills's constitutional rights "amounts to an execution and/or implementation of a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the officers of the Louisville Metro Police Department." *Id.* at ¶ 24]

To prevail on a Section 1983 *Monell* claim against a city or county under the Fourth Amendment, Mills must show "(1) that [he] suffered a constitutional violation and (2) that a municipal policy or custom directly caused the violation." *Hardrick v. City of Detroit, Michigan*, 876 F.3d 238, 243 (6th Cir. 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-92 (1978)). The question for the Court at the summary judgment phase of the case is "whether [Mills has] produced sufficient evidence for a reasonable jury to find in [his] favor." *Id.*

Mills has simply argued too little with respect to this claim. Mills's theory for a *Monell* violation attaches to Summerall's conduct, claiming violations of his constitutional rights. As explained above, however, both Summerall and Sergeant Kline had probable cause to effectuate his arrest. Moreover, Mills has put forth no evidence whatsoever to support these claims. Zero.

Because Mills can demonstrate no constitutional violation, and the record is devoid of any facts supporting this claim, Defendant Louisville Metro will be granted summary judgment on this claim.

### d. Negligent Hiring Claim

Mills also alleges a state law claim of negligent hiring against Louisville Metro based on Summerall's conduct during the arrest. [R. 1, Compl., ¶ 27] Just like Mills's state law claims against Summerall, Mills failed to address this claim in any meaningful way in his Response or Motion for Summary Judgment. Defendants' motion will be granted on this claim, on the basis that Mills has failed to adequately support his claim.

"Under Kentucky law, the elements of negligent hiring and retention are: (1) the employer knew or reasonably should have known that an employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 733 (Ky. 2009) (citing *Oakley v. Flor–Shin, Inc.,* 964 S.W.2d 438, 442 (Ky.App.1998)).

Mills makes only cursory reference to this claim in the Introduction to his Response to Defendants' Cross Motion to Summary Judgment. *See* [R. 23-1, at p. 1] Otherwise, he fails to develop this argument in any meaningful way. As he has not put forth one piece of evidence in response to Defendants' well-supported Cross Motion for Summary Judgment, Defendants are granted summary judgment on this state law claim as well.

### e. Punitive Damages

Because Defendants have demonstrated that no genuine issue of material fact exists with respect to any of the claims against them, Mills's remaining claim for punitive damages also fails. Summary judgment is granted for Defendants on this claim.

## 2. Mills's Motion for Summary Judgment

Typically, the Court applies the same standard of review to cross-motions for summary judgment as when only one party files. *McKim v. New Market Techs., Inc.*, 370 F. App'x 600, 603 (6th. Cir. 2010). The Court evaluates each motion on its own merits, drawing all reasonable inferences against the party whose motion is under consideration. *Beal ex rel. Putnam v. Walgreen Co.*, 408 F. App'x 898, 902 (6th Cir. 2010). And while summary judgment for one side is not necessarily appropriate simply because the parties file cross-motions for summary judgment, *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir. 2001) (footnote omitted), the existence of the video in this case shifts the Court's analytical framework when addressing the parties' cross-motions. Because the video in this case decidedly contradicts Mills's "entire version of events" in material respects to each claim, the Court may disregard Mills's version of the facts on summary judgment. *Hanson*, 736 F. App'x at 527 (citing *Coble*, 634 F.3d at 870). Having reviewed the record as a whole, including the video capturing the events in question, the Court concludes there is no genuine issue that remains for trial, and the Plaintiff's Motion for Summary Judgment is denied.

## IV. Conclusion

For the foregoing reasons the Court grants Defendants' Cross-Motion for Summary Judgment on all of Mills's claims. Accordingly, and with the Court being otherwise sufficiently advised;

**IT IS HEREBY ORDERED** as follows:

1. Defendants' Motion to Dismiss [**R. 13**] is **DENIED AS MOOT.**

2. Mills's Motion for Summary Judgment [**R. 14**] is **DENIED**.

3. Defendants' Motion for Summary Judgment on all claims [**R. 17**] is **GRANTED.**

4. Mills's Motion to Strike Defendants' Untimely Motion for Summary Judgment [**R. 22**] is **DENIED**.

5. A separate Judgment will be entered consistent with this Order.

cc: Counsel of record